UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re: PURDUE PHARMA L.P., et al.,

———————————————————— x

This Filing Relates to

———————————————————— x

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE,

                    Appellant,

v.

PURDUE PHARMA L.P., et al.,

                    Appellees.

———————————————————— x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/2021

21 cv 7969 (CM)
21 cv 7966 (CM)

## MEMORANDUM AND ORDER DENYING WITHOUT PREJUDICE THE UNITED STATES TRUSTEE'S EMERGENCY MOTION FOR A STAY PENDING APPEAL

McMahon, J.:

      Before the Court is the motion by the United States Trustee, William K. Harrington, (the "U.S. Trustee" or "Movant") for an emergency stay pending his appeals from two orders of the United States Bankruptcy Court for the Southern District of New York (Drain, B.J.) – which will be referred to as the Confirmation Order and the Advance Order.

      The Peter Ballantyne Cree Nation, Certain Canadian Municipality Creditors including the City of Grand Prairie; the City of Brantford; the City of Grande Prairie; the City of Lethbridge; and the City of Wetaskiwin have formally joined in the U.S. Trustee's motion. (*See* Dkts. 35, 36 and Dkts. 36, 37 in Case Nos. 21-cv-7969 and 21-cv-7966 respectively). At oral argument, counsel for the State of Maryland clarified that several of the states, including Maryland, while not formally joined in this motion, have their own stay motions before the Bankruptcy Court and agree that a stay is necessary.

The stay is sought in the U.S. Trustee's two above-captioned pending appeals, which are in the process of being consolidated with all pending appeals before me for all purposes before this court.[1]

Movants assert that a stay is needed in order to preclude any possible finding of equitable mootness – a doctrine alive and well in the Second Circuit – which could result in appellants and those aligned with their position losing their right to have their appeal heard.

The court entered a temporary restraining order ("TRO") halting all activity authorized by the Confirmation Order and the Advance Order on Sunday, October 10, and heard oral argument on the motions at a hearing on October 12.

For the reasons outlined below, the U.S. Trustee's motion is DENIED WITHOUT PREJUDICE on conditions specified at the conclusion of this opinion. The temporary restraining order will expire when the stipulation discussed at the conclusion of this opinion is docketed.

## BACKGROUND

In order to get this decision out promptly, I have liberally used background information from the memorandum of law filed by the United States Trustee in support of his motion.

### A. The Underlying Bankruptcy

The above-captioned appeals arise from a complex bankruptcy litigation in the United States Bankruptcy Court for the Southern District of New York, which involves hundreds of thousands of claims against the debtors'[2] ("Debtors" or "Purdue") for their alleged role in opioid

---

[1] At the present time there are thirteen such appeals docketed and assigned to me. I was advised at yesterday's hearing that at least one more such appeal – by the State of Vermont – has not yet been docketed. A consolidation order is being entered simultaneously with the release of this opinion.

[2] The Debtors in these cases are as follows: Purdue Pharma L.P., Purdue Pharma Inc., Purdue Transdermal Technologies L.P., Purdue Pharma Manufacturing L.P., Purdue Pharmaceuticals L.P., Imbrium Therapeutics L.P., Adlon Therapeutics L.P., Greenfield BioVentures L.P., Seven Seas Hill Corp., Ophir Green Corp., Purdue Pharma of Puerto Rico, Avrio Health L.P., Purdue Pharmaceutical Products L.P., Purdue Neuroscience Company, Nayatt Cove Lifescience Inc., Button Land L.P., Rhodes Associates L.P., Paul Land Inc., Quidnick Land L.P., Rhodes Pharmaceuticals L.P., Rhodes Technologies, UDF LP, SVC Pharma LP, and SVC Pharma Inc. The Debtors' corporate

crisis. *See In re Purdue Pharma L.P.*, --- B.R. ----, 2021 WL 4240974, at *2 (Bankr. S.D.N.Y. Sept. 17, 2021). The case is particularly unique and complex in part because the Debtors' assets "include enormous claims against their controlling shareholders, and in some instances directors and officers, who are members of the Sackler family." (*Id.* at *3).

      1.  <u>Purdue Seeks Bankruptcy Relief in September 2019</u>

Facing over 2,600 lawsuits related to its marketing of opioid medications, Purdue filed for bankruptcy relief on September 15, 2019. (*See* Bankruptcy Dckt., No. 1, No. 3787 at 28). Many of the lawsuits "sought to hold the Debtors and other parties jointly and severally liable for injuries related to opioid use" and "name certain of the Debtors' officers, directors, and shareholders, including members of the Sackler Families, as defendants." (Bankruptcy Dckt., No. 3787, at 28). Soon thereafter, the Bankruptcy Court enjoined the lawsuits against Purdue and hundreds of additional lawsuits against members of the Sackler family. *See In re Purdue Pharma L.P.*, 2021 WL 4240974, at *30 n.5; Bankruptcy Dckt., No. 2983, at 171. This Court affirmed that preliminary injunction. *Dunaway v. Purdue Pharma. L.P. (In re Purdue Pharma. L.P.)*, 619 B.R. 38 (S.D.N.Y. 2020).

The Bankruptcy Court then set a July 30, 2020, deadline for everyone holding a pre-petition claim against Purdue to file proofs of claim against it. (Bankruptcy Dckt., No. 1221). Roughly 618,000 claimants did so. *In re Purdue Pharma L.P.*, 2021 WL 4240974, at *1. These claimants include "the Federal Government, most of the States, thousands of political subdivisions, hundreds of Native American Tribes, more than 130,000 personal injury victims, and numerous hospitals, third party payors, ratepayers, public schools, and others." (*See* Bankruptcy Dckt., No. 3787, at

---

headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901. *See In re Purdue Pharma L.P.*, No. 19-23649-RDD (hereinafter "Bankruptcy Dckt."), Dkt. 3787, at FN 1.

28).

### 2. Parties Raise Objections to the Bankruptcy Plan's Non-Debtor Releases

On June 3, 2021, the Bankruptcy Court approved Purdue's disclosure statement of its proposed plan. (*See* Bankruptcy Dckt., No. 2988). Section 10.7(b) of that proposed plan included releases of causes of action against all "Shareholder Released Parties" (the "Non-Debtor Releases"), which it defined to include the "Sackler Family Members"—which it in turn defined to include Raymond and Mortimer Sackler, any of their descendants, current and former spouses, and any of their estates, as well as six other categories of individuals and entities. (*See* Bankruptcy Dckt., No. 3726, at 34–36, 126-127).

On July 19, 2021, the U.S. Trustee (who is not a claimant) objected to confirmation of the plan, arguing that the Non-Debtor Releases are unconstitutional, violate the Bankruptcy Code, and are inconsistent with Second Circuit law. (*See* Bankruptcy Dckt., No. 3256). Certain others filed similar objections to the plan,[3] and the Department of Justice filed a statement regarding the Shareholder Releases. (*See* Bankruptcy Dckt., No. 3268).

On September 1, 2021, the Bankruptcy Court rendered an oral ruling, stating it would confirm the proposed plan provided certain changes were made to it. (*See* Bankruptcy Dckt., No. 3731). Purdue filed the final version of its plan (the "Plan") the next day. (Bankruptcy Dckt., No. Dkt. 3726). While narrowing certain language, the Plan still contained broad Non-Debtor Releases in Section 10.7(b), as well as broad definitions of "Releasing Parties," and "Shareholder Released Parties" all of which remains the subject of significant objections by the U.S. Trustee and certain claimants (and which are now the subject of these appeals before this Court). (*See* Bankruptcy

---

[3] The States of California, Connecticut, Delaware, Maryland, Oregon, Rhode Island, Washington, Vermont, and the District of Columbia, the City of Seattle, four Canadian municipalities, two Canadian First Nations and three pro se objectors. (Bankruptcy Dckt., No. 3787, at 28; *see also* No. 3594).

Dckt., No. 3726, at 125–128).

### 3.   The Effective Date of the Plan

The Plan states that the Non-Debtor Releases shall be deemed effective on the Plan's "Effective Date." (Bankruptcy Dckt., No. 3726, at 64). The Effective Date of the Plan triggers various events. For example, beginning on the Effective Date, certain trusts will begin to receive distributions with which to pay claims against Purdue. (*Id.* at 57-58, 61, 74-75, 102, 105). Also beginning on the Effective Date, the Sacklers are to make a first $300 million payment as set forth in the Shareholder Settlement Agreement, the first of a series of payments to be made over the course of ten years. (Bankruptcy Dckt., No. 3711, at 28). The Plan also provides that certain "Restructuring Transactions" must occur "on or before" the Effective Date, or as soon thereafter as possible, including the creation of at least two entities (NewCo and TopCo) that will receive Purdue's assets; the creation of eight trusts being established for the purpose of making distributions under the Plan; and the transfer to those entities and trusts of various assets and funds. (Bankruptcy Dckt., No. 3726, at 34, 56, 70, 72, 83; *see also* No. 3528, at 886-89). On or before the Effective Date, Purdue also will provide $10 million to fund an escrow account for the payment of certain directors and employees. (Bankruptcy Dckt., No. 3726, at 68-69).

The Plan defines its "Effective Date" as "the date selected by the Debtors for the consummation of the Plan, or as soon thereafter as reasonably practicable." (Bankruptcy Dckt., No. 3726, at 9). The Plan includes a list of conditions precedent to the Effective Date. One such condition is that the Confirmation Order "shall not have been modified or vacated on appeal." (*Id.* at 117). Another is entry of a judgment of conviction in accordance with Purdue's federal plea agreement. (*Id.* at 4, 9, 24-25, 29, 117-118). Under the plea agreement, the Plan cannot become effective until seven days after the sentencing hearing, which will be held at least seventy-five

days after the Confirmation Date. (Bankruptcy Dckt., No. 1828, at 37). Because the Confirmation Order was entered on September 17, 2021, the sentencing cannot take place until at least December 1, 2021. I am advised that the sentencing in the criminal case, which is pending in the District of New Jersey, has not yet been set by Judge Arleo.

The United States Trustee advises that, under the Plan, the conditions precedent are all waivable except for one: the execution of the Shareholder Settlement Agreement and receipt of the initial payment due thereunder. (Bankruptcy Dckt., No. 3726, at 117-118). However, at the October 12 hearing, all parties appeared to agree that nothing could advance the Effective Date of the Plan to any date earlier than December 8, 2021.

### 4. Judge Drain Enters the Advance Order on September 15, 2021

On September 15, 2021, Judge Drain entered an Order (I) Authorizing the Debtors to Fund Establishment of the Creditor Trusts, the Master Disbursement Trust and Topco, (II) Directing Prime Clerk LLC to Release Certain Protected Information and (III) Granting Related Relief (the "Advance Order"). (Bankruptcy Dckt., No. 3773). The Advance Order authorizes Purdue to take certain preliminary steps before the Effective Date, so that aspects of the Plan can be implemented on the Effective Date. Purdue has represented to the Bankruptcy Court and to this court that approximately $6.9 million in funds will be spent pursuant to the Advance Order for things such as setting up (but not funding) the eight trusts for which the Plan makes provision, building technology to analyze and process claims, providing accounting and legal services, and compensating the TopCo managers and the trustees of the various Plan trusts. (Bankruptcy Dckt., No. 3484, at 7-16). The Advanced Order also authorizes disclosure of PI Data—including names and social security numbers—to the Proposed PI Trustee and others. (Bankruptcy Dckt., No. 3773, at 5-6).

The Advance Order was effective "upon its entry." (*Id.* at 6). Counsel for the Debtors advised me at the October 12 hearing that much of this $6.9 million had already been expended prior to the entry of the TRO.

On September 15, 2021, the U.S. Trustee took an appeal from both the Advance Order and the Bankruptcy Court's September 1 oral ruling confirming the Plan. (*See* Bankruptcy Dckt., Nos. 3776, 3777).

5. Judge Drain Enters the Confirmation Order and Modified Bench Ruling on September 17, 2021

On September 17, 2021, Judge Drain entered the Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debors (the "Confirmation Order") and Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter 11 Plan (the "Modified Bench Ruling"). Soon thereafter, the U.S. Trustee filed an amended notice of appeal, as did the States of Washington, Maryland, Connecticut, Washington D.C., California, Vermont, Delaware, Rhode Island, Oregon, certain Canadian governmental entities, and several individuals proceeding *pro se*. (*See* Bankruptcy Dckt., Nos. 3724, 3725, 3774, 3775, 3780, 3784, 3810, 3812, 3813, 3818, 3832, 3839, 3849, 3851, 3853, 3877, 3878).

The Bankruptcy Rules imposed a default stay of the Confirmation Order until October 1, 2021. Fed. R. Bankr. P. 3020(e).

6. The U.S. Trustee Files a Motion for a Stay Pending Appeal Before Judge Drain

On the very day that he filed his initial notices of appeal, the U.S. Trustee filed a motion for a stay pending appeal. (Bankruptcy Dckt., Nos. 3778, 3801). In his stay motion before the Bankruptcy Court, the U.S. Trustee expressed the concern that, were a stay to be denied, Purdue might try to evade appellate review of the Confirmation Order altogether by arguing that the appeal

has become equitably moot as a result of steps taken pursuant to the Advance Order.  (Bankruptcy Dckt., No. 3779, at 7). The U.S. Trustee moved for an expedited hearing on its stay motion on or before September 29, 2021. *Id.* The States of Washington, Connecticut, Maryland and certain Canadian governmental entities also sought a stay pending appeal before the Bankruptcy Court. (Bankruptcy Dckt., Nos. 3789, 3845, 3873).

On September 17, 2021, the Bankruptcy Court notified the parties that it would hold a status conference on September 30, 2021. (Bankruptcy Dckt., No. 3804-2).

On September 22, 2021, the U.S. Trustee asked the Bankruptcy Court to extend the automatic stay of the Confirmation Order and for a limited stay of the Advance Order pending resolution of the motion for a stay (the "Bridge Motion"). (Bankruptcy Dckt., No. 3802). It also asked for an expedited hearing on the Bridge Motion. (Bankruptcy Dckt., No. 3804).

At the September 30, 2021, status conference, the Bankruptcy Court denied the Bridge Motion and declined to stay the Advance Order. (Bankruptcy Dckt., No. 3883, at 22-23). The court stated that, because the actions that Purdue is taking before the Effective Date "can be undone," they could not be a basis for arguing that the appeal is equitably moot. He also concluded that Purdue would be judicially estopped from arguing to the contrary. (*Id.* at 23). At the October 12 conference, I was advised that Purdue represented that it would not argue that the steps being taken under the Advance Order – which involve the expenditure of one one thousandth of one percent of the Estate's assets, entirely on preliminary matters that would allow the Estate to begin processing claims promptly if the Plan were to be confirmed – resulted in equitable mootness.

The Bankruptcy Court scheduled oral argument on the motions for a stay on November 9, 2021 – a date almost a month before the earliest possible Effective Date of the Plan. (*See* Bankruptcy Dckt., No. 3890).  Judge Drain also indicated that he might be disposed to requiring

Debtors to provide advance notice of their intent to go effective, even if he did not enter a stay, so that there would be time for Appellants to seek a stay and avoid equitable mootness if they thought it necessary. (Bankr. Docket 3883, at 22)

## B.  The Bankruptcy Appeal

On October 8, 2021, the U.S. Trustee filed its emergency motion for a stay pending appeal before this Court. (Dkts. 18 and 19 in Case Nos. 21-cv-7969 and 21-cv-7966 respectively). On October 10, 2021, this Court entered a temporary restraining order pending argument on the motion for a stay. (Dkts. 32, 33 in Case Nos. 21-cv-7969 and 21-cv-7966 respectively). On October 12, 2021, this Court held a scheduling conference and oral arguments on the U.S. Trustee's emergency motion for a stay.

## DISCUSSION

To determine whether to grant a stay pending appeal, a court considers four factors: whether the movant is likely to succeed on the merits on appeal; whether the movant will suffer irreparable injury if the stay is denied; whether issuance of the stay will substantially injure the other parties interested in the proceeding; and where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Where the government is a party, the injury and public interest factors merge. *Id.*

There is substantial overlap between the *Nken* factors and those that govern the entry of preliminary injunctions. *Id.* at 434. In this Circuit, a preliminary injunction can issue if the movant establishes either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and (3) a balance of hardships tipping decidedly in the movant's favor, as well as irreparable injury in the absence of an injunction. *Kelly v. Honeywell Int'l, Inc.*, 933 F. 3d 173, 183-84 (2d Cir. 2019).

In this case, Debtors conceded at oral argument on October 12 the existence of sufficiently serious questions going to the merits to make them a fair ground for litigation and focused their attack on the balance of hardship and the purported failure of the U.S. Trustee to show irreparable injury at a time when the Effective Date of the Plan was almost two months in the future at the earliest.[4]

The balance of hardship question is thorny. I accept the representations of Debtors and their allies that it is imperative to do whatever can be done now so that, if confirmation of the Plan is upheld on appeal, the Estate can begin dealing with claims and desperately needed remediation measures promptly. Delay matters in this case. But in the end, we are speaking only of delay – delay that this court has done its best to minimize by putting the parties on a rocket docket for these appeals. Appellants for their part raise important questions under the Constitution, the Bankruptcy Code and Second Circuit law. The importance of having those issues considered and decided on appeal cannot be understated. For appellants and their allies to lose that right would indeed be irreparable – not to mention inequitable. I thus conclude that Movants have tipped the balance of hardship decidedly in their favor.

However, after hearing argument, and coming to understand both what is being done pursuant to the Advance Order and when the earliest possible Effective Date falls, I agree with the Debtors that Movant's speculation about the possibility of an equitable mootness ruling from the Second Circuit[5] does not (yet) rise to the level of irreparable injury.

---

[4] On numerous occasions since the United States Supreme Court's decision in *Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), this court has questioned whether the Second Circuit's "sufficiently serious question going to the merits" rule can be relied on any longer. *See Bergamaschi v. Cuomo*, No. 20 Civ. 2817 (CM), 2020 WL 1910754, at *5 n. 1 (S.D.N.Y. Apr. 20, 2020). However, as can be inferred from the date of *Kelly* (which was decided in 2019), the Second Circuit has not seen fit to abandon its alternative standard; and as no party has questioned its applicability here – and the opponent of a stay concedes the obvious (there are indeed serious questions going to the merits that make them a fair ground for litigation) -- I will apply it.

[5] I emphasize the Court of Appeals because Judge Drain has already ruled that the steps being taken pursuant to the Advance Order would not justify a finding of equitable mootness – indeed, that is part of his order denying the Bridge

Equitable mootness is a judge-made doctrine that is "grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005). In bankruptcy cases such as these, equitable mootness is never found unless "the debtor's reorganization plan has been *substantially* consummated." *In re BGI, Inc.*, 772 F.3d 102, 108 (2d Cir. 2014)(emphasis added) (citing *In re Charter Communications, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012)). "'Substantial consummation,' as defined by section 1101(2) of the Bankruptcy Code, requires '(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan'; and, (C) commencement of distribution under the plan.'" *In re BGI, Inc.*, 772 F.3d at 108 (quoting 11 U.S.C. § 1101(2)). Even then, the substantial consummation of a plan gives rise only to a presumption of equitable mootness, one which "can be overcome by an objector" in certain instances -- including where the appellant has "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order." *FritoLay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952–53 (2d Cir.1993).

In light of this, it is to conclude at this time that there is any real threat that these appeals could be found to be equitably moot. Unless someone is lying to me, the only steps being taken pursuant to the Advance Order are preliminary and administrative or ministerial. No step is proposed that would commence consummation of the Plan itself, much less result in a transfer or

---

Motion (Bankruptcy Dckt., No. 3883, at 22-23) – and this court feels exactly the same way. Therefore, it is only the views of the Court of Appeals about which we cannot be sure.

all or substantially all of the property proposed to be transferred, assumption by anyone of anything, or (most important) the commencement of distributions under the Plan. The expenditures contemplated by the Advance Order – amounting to at most $6.9 million – are represented to be one one thousandth of one percent of the Bankruptcy Estate's assets, which is no way could qualify (equitably or otherwise) as substantial consummation. As of today, Movants have not identified any concrete harm that will arise between now and November 9, when Judge Drain is scheduled to consider their various stay motions. And as Debtors and their allies pointed out yesterday, no one can say that the U.S Trustee has slept on his rights or failed to take any and all steps available to him to obtain a stay. I have little doubt that will continue to be the case.

Moreover, at oral argument the Debtors and representatives of at least two of the appealing Committees that support the Plan agreed to enter into a written stipulation that they would not ever argue to any court that the pending appeals had been rendered equitably moot by the actions undertaken pursuant to the Advance Order. I am prepared to condition denial of this motion on the entry of such a written stipulation by the Debtors and all Appellees and proponents of the Plan. I am also prepared to condition denial of a stay on the entry of an order by this court requiring Debtors to provide all appellees and other interested parties with fourteen days' notice of the actual Effective Date. This, it seems to me, acknowledges the as-yet hypothetical but nonetheless serious concerns raised by the U.S. Trustee, while allowing Debtors to commence the numerous and complex steps necessary to be ready to go effective. And if Judge Drain's November 9 decision proves unsatisfactory to Movants, they can always appeal it to this court;[6] I am on the record as stating that I will not allow this appeal to be equitably mooted. If at any time it appears that imminent action might lead to that result, I invite the Movants to knock on my door.

---

[6] Assuming, of course, that the appeal is still pending in this court – which it may or may not be.

## CONCLUSION

For the foregoing reasons, the U.S. Trustee's emergency motion for an emergency stay of the Confirmation and Advance Orders pending appeal is DENIED WITHOUT PREJUDICE on the condition that the written stipulation described above be filed before this Court forthwith. The TRO shall continue in effect until that stipulation is docketed, at which point it will be deemed dissolved. The stipulation must be signed by every Appellee and by everyone who, after yesterday's conference, intends to present evidence to this court that it should be deemed an Appellee, or it will not meet the court's requirements.

Sufficient cause having been found therefor, it is hereby ORDERED that Debtors shall give to Appellees and to every party accorded amicus curiae status in connection with these appeals no less than fourteen (14) days' written notice of the date on which Debtors intend that the Plan shall become effective (the Effective Date).

This constitutes the opinion and order of the court. It is a written opinion. The Clerk is directed to close the motion at Dockets 18 and 19 in Case Nos. 21-cv-7969 and 21-cv-7966 respectively.

Dated: October 13, 2021

_____

U.S.D.J.

BY ECF TO ALL COUNSEL

13